

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2006

# USA v. Thomas

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2652

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Thomas" (2006). *2006 Decisions.* Paper 1118.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

⎯⎯⎯

No. 05-2652

⎯⎯⎯

UNITED STATES OF AMERICA

v.

SONIA MARLENE THOMAS

Appellant

⎯⎯⎯

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 02-cr-123-2
District Judge: Honorable William L. Standish

⎯⎯⎯

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2006

Before:  BARRY, SMITH and ALDISERT, Circuit Judges

(Filed:  May 12, 2006)

⎯⎯⎯

OPINION OF THE COURT

⎯⎯⎯

ALDISERT, Circuit Judge.

Sonia Marlene Thomas appeals the sentence she received after pleading guilty to

one count of conspiring to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, and one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h). For the reasons that follow, we will affirm.

I.

As we write only for the parties, who are familiar with the underlying facts, we shall set out only those facts necessary to our brief discussion. Thomas pleaded guilty to two counts of a 21-count indictment on October 29, 2002. The presentence report found that Thomas's base offense level was 23 and her criminal history category was I, resulting in a Guidelines range of 46-57 months. Sentencing was postponed numerous times so that Thomas could assist law enforcement in various investigations. After entering her plea, Thomas was released on house arrest, the conditions of which she violated several times.

On March 25, 2004, the day before the sentencing hearing was scheduled, Thomas filed a motion for a downward departure from the Guidelines pursuant to USSG § 5H1.6 on the grounds that "[s]ervice of a [s]entence within the applicable guidelines range will cause substantial, direct, and specific loss of essential caretaking, or essential financial support to the defendant's family." Thomas is the mother of seven children, six of whom are minors. Her husband, who is also the father of the six minor children, was one of her four co-defendants in this matter and was also sentenced to a term of imprisonment. In the motion, Thomas asserted that she is the sole caretaker and means of financial support

2

for the children and that she has no other family members who can care for her children while she is incarcerated.

On March 26, 2004, Thomas failed to appear at her sentencing hearing. She was captured in California almost a year later, on March 11, 2005, and was transferred back to the Western District of Pennsylvania. She was sentenced on April 26, 2005. At the hearing, the District Court heard argument from both parties on Thomas's motion for downward departure for extraordinary family responsibilities. The Government opposed the motion, arguing that although this was a sad case, Thomas had repeatedly failed to comply with court orders and to meaningfully cooperate with the Government in its investigations.

After hearing these arguments, the District Court stated:

Well, based on what I have heard, I don't believe that, under the guidelines . . . were they binding, Mrs. Thomas wouldn't be entitled to a downward departure. And I'll, certainly, take her request into consideration, but I don't think that she can expect a departure down from the lower end of the sentencing guideline[s]. And, so, I will proceed here.

Without ruling on the departure, the Court made the finding that Thomas's Guidelines range was 46-57 months. The Court then acknowledged that it had read letters from Thomas's children, and proceeded to hear Thomas's testimony. After listening to Thomas's testimony and defense counsel's arguments, the District Court imposed a sentence of 46 months for each count, to be served concurrently, and to be followed by a three-year term of supervised release. In explaining its sentence, the District Court stated:

3

After consideration of the factors set forth in Section 3553 of Title 18, United States Code, the reason for the imposition of sentence is as follows. The defendant has entered a guilty plea to conspiring to distribute at least a hundred kilograms, but less than four hundred kilograms, of marijuana, to conspiring to launder funds of more than $350,000, but less than $600,000. She has one previous conviction for possession of marijuana and has agreed to cooperate with the government.

While the defendant has admitted her guilt to the present offenses, she does not have an extensive criminal history and, therefore, the Court finds that a sentence at the lowest end of the guideline range is sufficient to address the sentencing objectives of punishment, incapacitation, and deterrence.

The Court recognizes that defendant has seven children, several of whom are minors and with whom the defendant reportedly has a close relationship. Under the guidelines, family ties are not ordinarily relevant to determining a sentence. However, under Section 3553, the history and characteristics of the defendant, including her family ties, are pertinent to crafting an appropriate sentence.

In addition, the Court recognizes the defendant has a long history of marijuana use, especially since 1995 or 1996, until the time of her arrest. Defendant reportedly smoked marijuana on a daily basis.

Under Section 3553(a)(2)(D), the defendant's need for correctional treatment is relevant in determining the appropriate sentence. Due to defendant's history of drug use and given the nature of the current offense, it is recommended that the defendant undergo testing and, if necessary, treatment for substance abuse.

In the Court's view, a sentence of forty-six months at each of Counts One and Two to be served concurrently is sufficient, but not greater than necessary to satisfy the purpose of sentencing, given the nature and circumstances of the offenses and history and characteristics of the defendant and taking into consideration, also, the fact that this sentence is being imposed a year after it was originally scheduled, because she didn't report for sentencing when sentencing was originally scheduled.

II.

Thomas's sole contention on appeal is that the District Court erred in denying her

4

request for downward departure from the Sentencing Guidelines. Under *United States v. Denardi*, 892 F.2d 269, 271-272 (3d Cir. 1989), which was recently reaffirmed in *United States v. Cooper*, 437 F.3d 324, 333 (3d Cir. 2006), our jurisdiction to entertain this argument depends on the basis for the District Court's ruling. If the ruling was based on the District Court's belief that a departure was legally impermissible under the Guidelines, we have jurisdiction to determine whether the District Court's understanding of the law was correct. *Denardi*, 892 F.2d at 271-272. By contrast, if the District Court's ruling was based on an exercise of discretion, we lack jurisdiction. *Id.*; *see also United States v. Minutoli*, 374 F.3d 236, 239-240 (3d Cir. 2004) (discussing our jurisdiction to review denials of downward departure motions).

For example, in *United States v. McQuilkin*, the district court refused to grant a discretionary downward departure for extraordinary physical impairment, finding that the defendant's "condition was 'not that type of an impairment so severe and complete that the downward departure [was] . . . warranted.'" 97 F.3d 723, 730 (3d Cir. 1996). We observed that this statement could mean one of two things: either "that McQuilkin's impairment was not extraordinary enough to allow the court to depart under the authority of § 5H1.4; or that the nature of the impairment was sufficiently extraordinary to allow the court to depart, but that the court elected not to depart on this occasion." *Id.* Interpreting the district court's statement to mean that McQuilkin did not qualify for departure under the Guidelines, we held that we had jurisdiction to review this legal question. *Id.*

5

Thomas argues that her case is like *McQuilkin*, and that we have jurisdiction to determine whether Thomas's family responsibilities were sufficiently extraordinary to qualify for a departure under the Guidelines. She argues that the District Court's statement, "Well, based on what I have heard, I don't believe that, under the Guidelines, I, were they binding, Mrs. Thomas wouldn't be entitled to a downward departure[,]" indicates that it was making a legal determination that Thomas does not qualify for a departure under the Guidelines.

Although we agree that this statement, considered alone, implies that the District Court made a legal determination that Thomas did not qualify for a departure under the Guidelines, we are not persuaded that this was the basis of the District Court's refusal to depart. After *Booker*, district courts are no longer bound by the Guidelines and they may depart regardless of whether a defendant qualifies for a downward departure under the Guidelines. Accordingly, whether a defendant qualifies for a departure under the Guidelines is of decreased significance after *Booker*. Here, the District Court merely observed that it believed that Thomas would not qualify under the Guidelines, while explicitly noting that the Guidelines are not binding. It then stated that it will nonetheless "take her request [for a downward departure] into consideration[.]" After listening to Thomas's testimony, the District Court engaged in a lengthy discussion of the § 3553(a) factors, explicitly addressing Thomas's family circumstances. The Court ultimately concluded that Thomas's need for substance abuse treatment, the seriousness of her crime, and her failure to report for sentencing weighed against a shorter sentence. In light

of the entire record, we are satisfied that the District Court's denial of Thomas's motion for downward departure was based on discretionary, rather than legal, considerations, and consequently we do not have jurisdiction to review its decision.

Moreover, even if the District Court relied on a legal determination in denying the motion to depart, it correctly applied the proper legal standard. Although the circumstances in this case are certainly unfortunate, they simply do not qualify as "extraordinary" under this Court's precedents. *See United States v. Sweeting*, 213 F.3d 95, 108-109 (3d Cir. 2000) (finding that the district court abused its discretion in granting a downward departure to a single mother providing for five children, one of whom had a neurological disorder); *United States v. Headley*, 923 F.2d 1079, 1082 (3d Cir. 1991) (affirming the denial of departure for a single mother of five minor children and observing that "every court to consider the issue of departure based on the effect that sentencing a single parent to prison will have on minor children has found the circumstances not to be extraordinary"). Accordingly, inasmuch as the District Court may have relied on a legal determination, there was no error.

## III.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.[1] We will affirm Thomas's sentence.

---

[1] To the extent that Thomas's brief can be read to argue that the District Court erred by failing to make "findings on the evidence presented for downward departure," failing to consider the § 3553(a) factors, and imposing an unreasonable sentence, *see United States v. Booker*, 543 U.S. 220, 261 (2005), we reject those arguments. No specific findings are

_____

_____

necessary for denying a downward departure. *See United States v. Georgiadas*, 993 F.2d 1219, 1222-1223 (3d Cir. 1991) (holding that sentencing courts are not required to make express statements explaining a denial of downward departure). Similarly, district courts do not need to discuss and make specific findings on each of the § 3553(a) factors. *Cooper*, 437 F.3d at 329. Rather, the record need only demonstrate that the district court gave "meaningful consideration to the § 3553(a) factors." *Id.* We are satisfied that the District Court meaningfully considered those factors here. And because the District Court reasonably applied the § 3553(a) factors and meaningfully considered all arguments raised by the parties that have "recognized legal merit and factual support in the record," Thomas has not met her burden of proving that the sentence was unreasonable. *See id.* at 332.